107 P.2d 1047

**CHARLES ILFELD CO. v. NICKSON.**

No. 4552.

Supreme Court of New Mexico.

Oct. 21, 1940.

Rehearing Denied Dec. 26, 1940.

W. A. Dunn, G. T. Watts, and James T. Jennings, all of Roswell, for appellant.

R. J. Nordhaus, of Albuquerque, for appellee.

SADLER, Justice.

The question for review is that of defendant's personal liability to plaintiff (appellee here) on an alleged promise to pay the latter's merchandise account out of the

profits arising from the management of the business of defendant's then son-in-law, which management it was claimed the defendant had taken over and assumed.

The defendant's former son-in-law, John B. Beers, Jr., was engaged in business in Roswell under the trade-name of Nickson Liquor Shop and became involved in financial difficulties. Creditors, among them the plaintiff, began to press for payment of their accounts. The defendant took over the management of the shop. Based upon a letter to plaintiff and certain oral testimony, the trial court found that the defendant promised to pay plaintiff's account against John B. Beers, Jr., out of the profits of the business of the Nickson Liquor Shop managed by the defendant for said John B. Beers, Jr; that in consideration of said promise the plaintiff, over a long period of time, forbore efforts to collect its account, at the same time allowing the defendant regular discounts on current purchases of liquor; that for the period from July 1, 1938, to July 1, 1939, there were net profits from said business in the sum of $3,227.63 and that from said profits the defendant withdrew the sum of $1,355.49 for the benefit of the defendant's daughter, the former wife of said John B. Beers, Jr.

The court further found that there were sufficient moneys on hand during the months of May, June and July, 1939, to have paid in full the sales tax for the collection of which levy was made on certain of the assets of said business. It seems also to be agreed by the parties that as a result of this levy, the assets levied upon were sold at sheriff's sale to the defendant and the business was continued by him under the name of Nickson Cocktail Lounge.

From the findings so made the trial court concluded that the defendant was liable to the plaintiff as for breach of the promise made. The theory of the trial court is reflected in its opinion filed in the cause. In the concluding paragraph thereof it said: "So, the Court will find that the sum of $1355.49 was wrongfully diverted out of the profits of this business, and that the net profits of the business during this period of time were in excess of that amount. But this plaintiff, however, is not entitled to judgment against the defendant in the full sum of $1355.49, but only for its proportionate amount. That is, it appears from the testimony that other creditors with unsecured claims were in the same position as this plaintiff. They had all been told the same thing, and were all holding off on the same promise, and the defendant's liability in the amount of $1355.49 must be to all such creditors in the proper proportion."

The measure of plaintiff's damage for breach of the promise found to have been made, as indicated by the court, was the amount which plaintiff would have received on its claim, if all other unsecured creditors to whom the promise likewise was made had received their proper share of the amount paid defendant's daughter out of the net profits. The plaintiff's share was fixed at $278.31, and judgment was entered

against defendant in that amount. Both sides appeal, the defendant complaining of th judgment against him and the plaintiff on its cross-appeal asserting itself aggrieved for failure of the trial court to award judgment for the full amount of its claim theretofore reduced to judgment against John B. Beers, Jr., in a separate action.

Two errors are assigned by defendant. First, it is claimed that neither the pleadings nor the evidence will support the finding of a promise by defendant to pay the claim sued on or any part thereof. This in effect is a challenge to the sufficiency of the evidence to sustain the trial court's finding that defendant did promise to pay plaintiff's account from the profits of the business, if there were profits sufficient in amount so to do. Thus considered, the claim of error is without merit. The defendant's letter to plaintiff of August 25, 1938, among other things, stated: "We cannot make any guarantee about paying the old account, but will continue to buy from your company, keep all bills paid promptly, *and when possible, will make payment on the old account of John B. Beers, Jr.*" (Italics ours.)

The person in charge of the business under defendant's management testified: "Did Mr. Nickson ever tell you that he would pay the account other than out of the profits of the business? A. No, he said he would pay out of the profits."

The defendant himself clarified the understanding had with plaintiff. He testified:

"The Court: (To Witness) As I understand from your testimony, the arrangement you had with this plaintiff was that if there were any net profits, you intended to apply that money to the payment of the old accounts from the profits, but not out of your pocket? A. Yes.

\* \* \* \* \* \* \* \* \*

"The Court: What I am interested in finding out is whether there was a similar arrangement with the unsecured creditors as with this plaintiff. A. When I went in I thought that if the business panned out I would do it, but I could not take it out of my pocket. I didn't have the money to do it with."

The defendant's bookkeeper testified:

"Q. Was there an understanding had as between you, as Mr. Nickson's agent, and all the wholesalers that their accounts would be paid if the business justified? A. Yes.

"Q. There was the same understanding with all of them as with Ilfeld? A. Yes."

In view of this evidence the trial court could hardly find otherwise than that defendant did promise to pay not only the plaintiff's account but the accounts of all other unsecured creditors from the profits arising from his management of the business, if any such profits arose. The plaintiff forbore pressing collection of its account over an appreciable period of time on the faith of the promise. This alone was an adequate consideration for the promise. Gonzales v. Gauna, 28 N.M. 55,

206 P. 511. That the defendant paid over to his daughter from the net profits the sum of $1,355.49 was an admitted fact. It may be said in explanation of this payment, although under the circumstances it does not afford legal justification, that it represented an accumulation of alimony payments awarded the daughter in divorce proceedings against the said John B. Beers, Jr.

The promise was made, it was breached, and the trial court adopted the proper measure of damages in awarding judgment by reason of such breach.

It is next claimed that the judgment is erroneous because no authority was shown in defendant to control the funds of the liquor shop as against the will of the owners. We are unable to see merit in this contention, nor does counsel's argument persuade us there is any. Apparently, defendant's assumption of management was with the consent of the owner of the business, John B. Beers, Jr., and that of his former wife, the defendant's daughter. But that is neither here nor there. The defendant represented that he was in the control and management of the business and would make payments on the old accounts as the profits justified. The former owner, John B. Beers, Jr., is not here complaining of any unwarranted assumption of authority by defendant in the handling of funds from the business and the latter is in no position to do so. We find the judgment without error in so far as defendant complains of it.

This leaves for consideration the plaintiff's cross-appeal. It asserts itself aggrieved because the trial court would not permit it to go into the question of profits after July 1, 1939, as a predicate for a judgment against defendant for the full amount of its claim. We think the trial court was right in its ruling. The principal assets of the business had been levied upon by the Bureau of Revenue and sold about this time to the defendant who continued the business under a new name. The plaintiff at the trial expressly disclaimed any intention of attempting to hold the defendant as a trustee or as for breach of a constructive trust. Defendant was himself a creditor of the business and unless there can be read into the loose arrangement entered into an engagement on defendant's part to continue the management indefinitely for the benefit of the other unsecured creditors, then the plaintiff's position cannot be sustained. Apparently, the plaintiff was willing to have defendant work out the payment of its claim from whatever profits might arise, the defendant to risk personal responsibility for any losses, if the business were not profitable. The trial court found no promise on defendant's part to continue the business indefinitely. We see none. The plaintiff, having expressly disclaimed any theory of trusteeship, the cross-appeal is without merit. Sustaining defendant's objection to plaintiff's proffered evidence on this phase of the case, the trial judge aptly remarked: "I don't see any reason to change my view on this situation. I am going to sustain the objection

on the ground that the theory of the plaintiff's case does not justify going into the profits that may have been derived since the business has changed hands. If the plaintiff still maintained that the business should have been held for the benefit of the creditors, he would have to proceed differently in Court in order to be in a position to assert that contention."

It follows from what has been said that the judgment is correct and should be affirmed.

It is so ordered.

BICKLEY, C. J., and BRICE, ZINN, and MABRY, JJ., concur.